DORSEY & WHITNEY LLP
Bruce R. Ewing
Jonathan Montcalm
51 West 52nd Street
New York, New York 10019
(212) 415-9200

Attorneys for Plaintiff
Gelmart Industries, Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GELMART INDUSTRIES, INC., <br><br> Plaintiff, <br><br> -v- <br><br> THE NATORI COMPANY INCORPORATED, <br><br> Defendants. | Case No. 19 Civ. <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiff Gelmart Industries, Inc. ("Gelmart" or "Plaintiff"), by its attorneys, Dorsey & Whitney LLP, for its Complaint for Declaratory Judgment against defendant The Natori Company Incorporated ("Natori" or "Defendant"), alleges as follows:

**Introduction**

1. For over two years, Gelmart has advertised, promoted, marketed and sold bras, sports bras and shaper tops throughout the United States – including on QVC and QVC.com, and then later on Amazon.com, under its federally registered trademarks THE FEATHER BRA and FEATHER BRA (the "FEATHER BRA Marks"). The general concept behind these bras and related goods – which will be referred to as the "Feather Bra Products" – is that they are "light as a feather," because they do not incorporate any wires, hooks or elastic into their lightweight design. Gelmart invested substantial resources to create the FEATHER BRA brand and the

Feather Bra Products, and the FEATHER BRA Marks have become symbols of substantial consumer goodwill owned exclusively by Gelmart.

2. Despite Gelmart's federal trademark registrations and its widespread success selling Feather Bra Products through two prominent national retailers, defendant Natori now threatens Gelmart's investment in the FEATHER BRA brand and the attendant goodwill Gelmart has established by making meritless accusations that Gelmart's marketing, promotion and sale of its Feather Bra Products infringes Natori's intellectual property rights, including its federal registration of the trademark NATORI FEATHERS, and its alleged common law trademark rights in the terms "feathers bra" and "feathers" as used in connection with bras.

3. To that end, on March 12, 2019, Natori sent the first of three cease-and-desist letters to Gelmart, erroneously claiming that Gelmart's sale of Feather Bra Products is likely to cause confusion with Natori's alleged trademarks, and demanding, among other things, that Gelmart cease all use of its registered FEATHER BRA Marks and abandon entirely the FEATHER BRA brand it had worked so hard and invested so much time in building.

4. Natori's demand letters are classic examples of severe overreaching by a company with no legitimate claim that Gelmart's sale of Feather Bra Products under the FEATHER BRA Marks will cause any confusion or violate any of Natori's alleged intellectual property rights. Natori's factual allegations and legal conclusions are baseless and hopelessly flawed. In light of Natori's demand letters, which have included demands that Gelmart cease all sales of Feather Bra Products within ninety days, Gelmart's business faces an imminent threat from Natori. As a result, there is a substantial controversy between the parties that have adverse legal interests. This controversy is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment by this Court. Gelmart therefore seeks a declaration that its

advertisement, promotion, sale, offering for sale, distribution and marketing of bras, sports bras and shaper tops under the trademarks THE FEATHER BRA and FEATHER BRA, has not infringed, diluted or otherwise violated the trademark rights of, or otherwise unfairly competed with, Natori, either under the Lanham Act or applicable state law.

## Parties, Jurisdiction and Venue

5.      Plaintiff Gelmart Industries, Inc. is a corporation formed under the laws of the State of Delaware that maintains its principal place of business at 48 West 38th Street, 10th Floor, New York, New York 10018.

6.      Defendant The Natori Company Incorporated is a corporation formed under the laws of the State of Delaware that, upon information and belief, maintains its principal place of business at 180 Madison Avenue, New York, New York 10016.

7.      This is an action for a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*., and Fed. R. Civ. P. 57.  An actual justiciable controversy exists between Gelmart and Natori that warrants the issuance of a judgment declaring that Gelmart, by its advertising, promotion, sale, offering for sale, distribution and marketing of its merchandise using the trademarks THE FEATHER BRA and FEATHER BRA, has not infringed, diluted or otherwise violated the trademark rights of, or otherwise unfairly competed with, Natori, either under the U.S. Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq*. (the "Lanham Act"), or applicable state law.

8.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338 and 2201.

9.      Upon information and belief, this Court has personal jurisdiction over Natori under CPLR 301 and 302 by virtue of its physical location within this State and this District,

from which it markets and sells its goods, including those bearing the alleged trademarks at issue.

10. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c).

**Gelmart, the Feather Bra Products and the FEATHER BRA Marks**

11. Gelmart is a leading supplier of women's intimate apparel that employs a top-notch design and product development team to create innovative, high quality products. Gelmart has a proven track record in designing and building brands, including its FEATHER BRA brand of lightweight bras, sports bras and shaper tops that are advertised, marketed, distributed and sold under the FEATHER BRA Marks.

12. Gelmart specifically designed its Feather Bra Products for women with real lives and real curves. These Products have revolutionized comfort by shaping, supporting and conforming to the curves of their wearers for a custom fit. Feather Bra Products are made from light, comfort-stretch fabric that virtually disappears under their wearers' clothes. And, there are no wires, no hooks and no elastic in Gelmart's Feather Bra Products.

13. Unlike the bras and related merchandise that Natori offers in association with the designation "feathers," Feather Bra Products are not decorated with feathers, do not contain feathers, and do not have feather motifs.

14. Gelmart has marketed, advertised, promoted and offered for sale Feather Bra Products since early 2017; and such Products were first sold on QVC and QVC.com beginning in March 2018, and then via Amazon.com beginning in March 2019. Gelmart has invested substantial time and resources in building its FEATHER BRA brand, and Feather Bra Products have been a great commercial success.

15. Gelmart is the owner of two trademark registrations issued by the U.S. Patent & Trademark Office (the "USPTO") on the Principal Trademark Register covering its FEATHER BRA Marks for bras, sports bras and shaper tops, as set forth below:

| Reg. No. | Trademark | Goods |
|---|---|---|
| 5,308,362 | THE FEATHER BRA | Bras, sports bras, shaper tops; all of the goods are not decorated with feathers, do not contain feathers, and do not have feather motifs. |
| 5,523,403 | FEATHER BRA | Bras, sports bras, shaper tops; all of the goods are not decorated with feathers, do not contain feathers, and do not have feather motifs. |

True and correct copies of printouts from the USPTO database detailing the particulars of these two registrations are attached as Exhibits 1 and 2. The foregoing trademark registrations are valid and subsisting. The FEATHER BRA Marks are distinctive trademarks symbolizing consumer goodwill whose value to Gelmart is substantial.

## Natori and Its Activities

16. Upon information and belief, Natori, which was founded by its CEO, Josie Cruz Natori, sells a variety of goods, including bras and lingerie, sleepwear, loungewear, clothing, accessories and home goods, all using some version of the NATORI trademark.

17. As is relevant here, Natori owns one U.S. trademark registration for the word mark NATORI FEATHERS, U.S. Reg. No. 4,628,132, which registration covers lingerie and underwear. Significantly, this registration contains a statement from Natori expressly disclaiming any exclusive right to use the word "feathers" except as part of the NATORI FEATHERS trademark. Attached as Exhibit 3 is a true and correct copy of Natori's June 5, 2014 submission to the USPTO agreeing to this express disclaimer. A true and correct copy of a printout from the USPTO database detailing the particulars of this registration for the NATORI FEATHERS trademark and reflecting the Natori disclaimer is attached as Exhibit 4.

18. Upon information and belief, Natori does not sell bras or related merchandise using the registered trademark NATORI FEATHERS as a unitary trademark, despite it being registered as such. Rather, Natori uses the word mark "NATORI" or variations thereof separate and apart from its use of the word "feathers." This makes sense, because it is the NATORI brand and NATORI trademark that are recognizable, and that identify the source of goods sold and distributed by Natori. By way of example, when a visitor goes to Natori's website, accessible through the domain name <natori.com>, they have the option to click on a link titled "EXPLORE THE BRANDS." Upon selecting that link, the visitor is taken to a page that details four brands: (i) *josie* NATORI, (ii) NATORI, (iii) JOSIE – JOSIE NATORI, and (iv) N NATORI. All of these brands prominently feature the word "Natori," and none of them use any variation of the term "feather."

19. Additionally, when a visitor goes to the "Bras" subsection of the "Bras & Lingerie" section of Natori's website, they are presented with several pull-down menus, which can be used to narrow any search results and/or to shop for specific brands, categories, sizes or colors. None of the options in any of these pull-down menus permits the visitor to narrow their search using the term "feathers." The three choices for "Brands" of Natori bras are "Josie Natori" "Natori," and "Josie."

20. As evidenced on Natori's website and the hangtags affixed to its merchandise, the bras are sold using the NATORI trademark, and terms such as "feathers," "flora," "sublime," and "hidden glamour," are merely style names used to distinguish the bras sold under the NATORI trademark, often describing the style of lace trim for each bra. Thus, the Natori website describes the Natori brand feather bra as "[y]our go-to everyday bra featuring our *signature*

*Feathers lace trim*" (emphasis added).  True and correct copies of examples from the Natori website are attached as Exhibit 5.

21. Similarly, the hangtags Natori uses reflect a three-part hierarchy of terms and images that Natori presents to consumers as its brand architecture.  The top part prominently features the NATORI trademark.  The second part describes the product's style, such as "feathers[;] Contour cups with beautiful Feathers lace trim[;] Signature Feathers lace runs through the frame around the body . . . " The bottom part shows a picture of a woman wearing the product and has the style name underneath (*e.g.*, "feathers").  True and correct copies of Natori's hangtags are attached as Exhibit 6.

22. It is very common in the fashion industry for manufacturers or suppliers to use style names to differentiate between and describe attributes of their products.  Consumers are therefore accustomed to seeing style names, understand that such terms are not brands in and of themselves, and do not associate such terms exclusively with any particular company.

23. The hangtags affixed to the merchandise sold by Natori that are included in Exhibit 6 make clear that Natori uses "feathers" to describe elements of its products to include feather motif lacing, such that the term lacks source-identifying significance as used by Natori.  Similarly, Natori uses the word "flora" on another line of bras as a descriptor.  The hangtags for the "flora"-styled bras state that "*Floral lace* adorns pads for beautiful and comfortable support" (emphasis added).  True and correct copies of hangtags for Natori's "flora" bras are attached as Exhibit 7.  This product is also described on the Natori website as having "[i]nnovative molded, *floral lace overlays* smooth cups for a seamless edge that disappears completely under clothes" (emphasis added).  *See* Exh. 5 at pg. 2.

24. These examples illustrate that Natori is not using the designation "feathers" as a trademark, so there can be no likelihood of confusion between Natori's feathers-style bras and related goods, and Gelmart's use of the FEATHER BRA Marks in association with Feather Bra Products.

25. Moreover, the uses by the parties of the word "feather" have different meanings. Natori uses "feathers" to describe the feather design of the lace, while Gelmart uses "feather" to suggest the lightweight design Feather Bra Products embody. Further, the prominent presence of the NATORI trademark as used with Natori's goods, among other reasons, means that the context in which the parties' respective trademarks are presented to consumers is vastly different.

26. It is therefore not at all surprising that Gelmart is unaware of any instances of actual confusion occurring among consumers or the trade between the parties' respective trademarks or products, notwithstanding two years of coexistence in the marketplace, nor has Natori identified any such instances of actual confusion.

**The Parties' Dispute Regarding Gelmart's Use of the FEATHER BRA Marks**

27. On March 12, 2019, counsel for Natori sent Gelmart the first of three cease-and-desist letters, claiming erroneously that Gelmart's sale of Feather Bra Products infringes Natori's alleged trademark rights, both as to the registered NATORI FEATHERS trademark, and Natori's claimed common law rights in the words "feathers bra" and "the feathers bra." Specifically, Natori claimed in its first letter that Gelmart's sale of Feather Bra Products is likely to cause confusion as to source, affiliation, sponsorship or endorsement and might also dilute Natori's alleged rights. Natori also demanded that Gelmart cease all use of the registered FEATHER BRA Marks, among other demands, and reserved all of its rights, at law and equity. A true and correct copy of the March 12, 2019 letter is attached as Exhibit 8.

28. Gelmart responded in writing to Natori's March 12, 2019 letter on April 2, 2019. Gelmart pointed out that the parties' respective designations create different commercial impressions, such that confusion between them is not likely. Additionally, as Natori had already claimed, its NATORI brand is internationally known, such that the word NATORI is the dominant portion of Natori's registered trademark NATORI FEATHERS. Gelmart also called into question Natori's dubious claim to own common law trademark rights in the designations "feathers bra" and "the feathers bra," in part because the NATORI word mark also appears in a prominent manner along with any use Natori may make of the terms "feathers bra" and "the feathers bra." A true and correct copy of Gelmart's April 2, 2019 letter is attached as Exhibit 9.

29. On April 8, 2019, Gelmart received another, follow-up demand letter from Natori's counsel. In that letter, Natori claimed that it was "beyond dispute" that it is "the exclusive owner of prior rights for NATORI FEATHERS, FEATHERS BRA and FEATHERS for bras," and that Gelmart's use of the registered FEATHER BRA Marks is likely to cause confusion. Notably, in this second demand letter, Natori altered the description of its alleged common law rights from that contained in its March 12, 2019 demand letter by adding an allegation that it owns common law trademark rights in the term "feathers" for bras. This is, of course, the exact opposite of what Natori told the USPTO when it sought registration of the NATORI FEATHERS trademark, and what its federal registration for NATORI FEATHERS reflects. *See* Exhibits 3 and 4.

30. In this second demand letter, Natori threatened Gelmart, stating that Gelmart's position that there was no likelihood of confusion "strains credulity and would not be well taken by any court or the Trademark, Trial and Appeal Board." Natori claimed that it had "superior, prior, nationwide, exclusive rights to its trademarks for bras," and that Gelmart was "infringing

9

those rights by brazenly using [Natori's] trademark on 'bras' for sale to consumers." Natori then repeated its demand that Gelmart cease and desist all use of the FEATHER BRA Marks, and provide certain other additional information. Natori also stated that, because it had put Gelmart on notice, Gelmart's "actions are henceforth considered willful under the Lanham Act." A true and correct copy of the April 8, 2019 letter is attached as Exhibit 10.

31.     Gelmart responded in writing on May 9, 2019, reasserting its position that there is no likelihood of confusion between the FEATHER BRA Marks and Natori's NATORI FEATHERS trademark. Regarding Natori's persistent claim to own common law trademark rights in the terms "feathers bra," "the feathers bra" and "feathers," Gelmart pointed out that the term "feathers" is used by Natori as a style name to differentiate among its product lines, and not as a source identifier. Gelmart also noted that the term "feathers" serves a descriptive function, because the bras sold by Natori using the "feathers" style name contain actual lace feathers as part of the design. Gelmart also took issue with Natori's claim that the parties' respective products could not coexist without consumer confusion by highlighting the fact that Gelmart has been selling its bras through QVC, which has broad national exposure, and that neither Natori nor Gelmart was aware of any actual confusion having occurred. A true and correct copy of Gelmart's May 9, 2019 letter is attached as Exhibit 11.

32.     On May 24, 2019, Natori sent its third demand letter to Gelmart, asserting that Gelmart's "self-serving statements" that its use of the FEATHER BRA Marks was not likely to cause confusion were "misplaced." Natori asserted again that it had used the terms "feathers" and "feathers bra" as source indicators because such terms were "prominently used on tags and in advertisements in large stylized font . . . ." Natori also claimed that whether its use of the word "feathers" constituted a style name was irrelevant because such uses are protectable if they

10

are source-identifying. (In doing so, Natori ignored the fact that its use of the term "feathers" serves a descriptive function as well, and that it had disclaimed any exclusive right to use that term except in combination with NATORI in its prior submission to the USPTO.)

33. In this third letter, Natori accused Gelmart of proffering "unfounded hyper-technical arguments" to support an effort by Gelmart to "'palm off' the honestly earned goodwill Natori has achieved in its FEATHERS Marks . . . ." Natori also provided the ultimatum that it would not continue to engage in "a never-ending letter campaign . . . to attempt to persuade [Gelmart] to simply comply with the law . . . ." Natori repeated its dubious assertion that if Gelmart was not seeking to palm off Natori's goodwill, then Gelmart should simply abandon all of its investment in its Feather Bra Products and FEATHER BRA Marks and select a new trademark. Finally, Natori "offered" to allow Gelmart to sell off its Feather Bra Products within ninety days, so that it could transition to a new brand, and Natori expressly reserved its rights at law and equity. A true and correct copy of Natori's May 24, 2019 letter is attached as Exhibit 12.

34. Based on this correspondence, it is apparent that there is a concrete dispute of sufficient immediacy and reality between the parties that requires a judicial resolution. Gelmart cannot continue its FEATHER BRA business while laboring under the imminent threat of litigation from Natori. Indeed, Natori's persistent and aggressive letters containing its unreasonable and unsupportable position that Gelmart's use of the FEATHER BRA Marks is likely to cause confusion have jeopardized Gelmart's continued ability to market, distribute, sell, advertise and promote Feather Bra Products, and pose a grave threat to Gelmart's investment in Feather Bra Products and its FEATHER BRA brand, and to the goodwill and recognition the FEATHER BRA Marks enjoy among the trade and public. Thus, there is at present an actual

controversy between the parties that threatens to seriously injure, damage and impair Gelmart's valuable trademark rights.

## COUNT I
## Declaratory Judgment

35. Gelmart repeats and realleges each and every allegation set forth in all of the foregoing paragraphs as if fully set forth herein.

36. Natori has claimed that Gelmart's sale, advertisement, promotion, distribution and/or marketing in the U.S. of Feather Bra Products and the use of the registered FEATHER BRA Marks infringes, dilutes or otherwise violates Natori's alleged trademark or other intellectual property rights.

37. However, the sale, advertisement, promotion, distribution and/or marketing of Feather Bra Products and the use of the registered FEATHER BRA Marks is not infringing, diluting or otherwise violative of Natori's alleged trademark or other intellectual property rights.

38. Accordingly, Gelmart is entitled to a judgment declaring that, by its advertisement, promotion, sale, offering for sale, distribution and marketing of Feather Bra Products, using the registered FEATHER BRA Marks, it has not infringed, diluted or otherwise violated the trademark rights of, or otherwise unfairly competed with, Natori, either under the Lanham Act or applicable state law.

WHEREFORE, Gelmart prays that this Court:

1. Issue a declaratory judgment that Gelmart, by its advertisement, promotion, sale, offering for sale, distribution and marketing of bras, sports bras and shaper tops under the trademarks THE FEATHER BRA and FEATHER BRA, has not infringed, diluted or otherwise violated the trademark rights of, or otherwise unfairly competed with, Natori, either under the Lanham Act or applicable state law.

2. Award Gelmart such other relief as the Court deems just and proper.

Dated: New York, New York  
June 5, 2019

DORSEY & WHITNEY LLP

By: /s/ *Bruce R. Ewing*  
Bruce R. Ewing  
Jonathan Montcalm  
51 West 52nd Street  
New York, New York 10019  
(212) 415-9200

Attorneys for Plaintiff  
Gelmart Industries, Inc.